**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| NOUCHIE VELLON, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>                 Plaintiff,<br>    v.<br><br>G.A.L. MANUFACTURING COMPANY, LLC, and<br>VANTAGE ELEVATION LLC,<br><br>                Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff NOUCHIE VELLON ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants G.A.L. MANUFACTURING COMPANY, LLC ("Defendant GAL"), and VANTAGE ELEVATION LLC ("Defendant VANTAGE" and with Defendant GAL, collectively, the "Defendants"), and states as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to uncompensated off-the-clock work, (2) unpaid wages, including overtime, due to improper rounding, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to uncompensated off-the-clock work, (2) unpaid wages, including overtime, due to improper rounding, (3) spread of hours premiums, (4) statutory penalties, (5) liquidated damages; and (6) attorneys' fees and costs.

3.      Defendant VANTAGE operates with and through its subsidiaries, of which Defendant GAL is one, a manufacturing business specializing in the production and sale of elevator related products, such as doors, controls, hydraulics, fixtures, and gears. Defendant VANTAGE, with and through its subsidiaries, operates manufacturing, production plants, and service centers out of seven (7) States and from the following locations:

  a. 50 East 153rd Street, Bronx, New York 10451-2104
  b. 80 Lexington Avenue, Central Islip, New York 11722-1024
  c. 19-19 37th Street, Astoria, Queens, New York 11105
  d. 9704 Jordan Circle, Santa Fe Springs, California 90670-3301
  e. 6150 Warehouse Way, Sacramento, California 95826-4908
  f. 3380 Gilman Road, El Monte, California, 91732-3201
  g. 2603 North 24th Street, Quincy, Illinois 62305-1215
  h. 1930 Devon Ave., Elk Grove Village, Illinois 60007-6022
  i. 3044 Lambdin Avenue, St. Louis, Missouri 63115-2814
  j. 1115 Andover Park W, Tukwila, Washington, 98188-3910
  k. 3247 W Story Road, Irving, Texas 75038-3532
  l. 15825 NW 15th Ave., Miami Gardens, Florida 33169-5605

4.      Plaintiff, potential collective members, and putative class members are current and former production line and packaging workers, employed by Defendants during the relevant statutory period.  These workers were all victims of Defendants' schemes to underpay employees. Specifically, Defendants' common payroll system is calibrated to round employees' hours towards their scheduled hours. Defendants' practice was not neutral and was implemented to the employees' detriment.

5.     Moreover, for employees working in New York like Plaintiff, employees were not compensated for spread of hours premiums (an additional hour of pay at the minimum wage rate) for workdays exceeding 10 hours.

6.     Plaintiff brings this wage and hour class action on behalf of himself and all similarly situated employees, who during the applicable state and federal limitations periods up to and including the present, were similarly underpaid by Defendants in violation of protections afforded under the FLSA and the laws and regulations of the following jurisdictions:

1) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

2) District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

3) Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.*;

4) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

5) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

6) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

7) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*;

8) Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

7.     To the extent that gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws) or claims seeking damages for failure to pay for all hours of work are not covered by the protection of a State's wage laws, Plaintiff further alleges that he and others similarly situated are entitled to recover from Defendants, the following pursuant to breach of contract and unjust enrichment: (1) wrongfully withheld or diverted payments, (2) punitive damages due to egregious conduct, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b),

28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as Defendants maintain their shared headquarters, the site from which the unlawful pay policies emanated, in New York City at the following location: 50 East 153rd St, Bronx, NY, 10451.

## PARTIES

10.      Plaintiff NOUCHIE VELLON is a resident of Bronx County, New York.

11.      Defendant G.A.L. MANUFACTURING COMPANY, LLC is a limited liability company organized under the laws of the State of Delaware with an address for service of process located at c/o COGENCY GLOBAL INC., 122 East 42nd Street, 18th Floor, New York, NY 10168, and a headquarters located at 50 East 153rd St, Bronx, NY, 10451.

12.      Defendant VANTAGE ELEVATION LLC is a limited liability company organized under the laws of the State of Delaware with an address for service of process located at c/o COGENCY GLOBAL INC., 122 East 42nd Street, 18th Floor, New York, NY 10168, and a headquarters located at 50 East 153rd St, Bronx, NY, 10451.

13.      Defendant VANTAGE operates all the sites of their elevator manufacturing business with and through its subsidiaries, the following corporate entities:

   a.  Defendant G.A.L. MANUFACTURING COMPANY LLC,
   b.  Hollister-Whitney Elevator Co. LLC,
   c.  Comprehensive Manufacturing Services, LLC,
   d.  Freight Tech, LLC,
   e.  Bore-Max Corporation,
   f.  Elevator Controls Corporation / Elevator Controls Company, LLC, and
   g.  Vertical Dimensions LLC.

14.      Defendant VANTAGE operates the above corporate entities, and the employees nominally employed by those entities, through the same executive management team, from the

same headquarters, and with the same policies and procedures. Each entity is engaged in related

activities, share common ownership, and have a common business purpose:

a. Defendant VANTAGE, through and with its subsidiaries, all jointly manufacture and sell elevator related products.

b. Defendant VANTAGE operates a single human resources department for all its subsidiaries, including Defendant GAL.

c. Plaintiff was hired by Defendant VANTAGE to work at its subsidiaries manufacturing center, Defendant GAL.

d. Defendant VANTAGE advertises and evaluates applicants for positions across its enterprise, including its subsidiaries, through a common career page and human resources department. Defendant VANTAGE's human resources department places applicants to nominally work at its subsidiaries on an as needed basis. *See* **Exhibit A** (Defendant VANTAGE's Career Page).

e. Plaintiff was terminated from his employment by Defendant VANTAGE. *See* **Exhibit B** (Termination Letter).

f. Defendant VANTAGE sells products across its enterprise, including through its subsidiaries, using a uniform standardized contract. *See* **Exhibit C** (Purchase Agreement).

g. Defendant VANTAGE advertises as a single entity, which operates its previously distinct subsidiaries: "From 2018 to date, we've united GAL, GAL Canada, Hollister-Whitney, Vertical Dimensions, Courion, Freight Tech, Bore-Max and Elevator Controls under the Vantage Elevator Solutions brand, 'Vantage' for short, to become a stronger, centralized solutions partner and provider of an unprecedented range of resources." *See* **Exhibit D** (Defendant VANTAGE's LinkedIn Page).

h. Defendant VANTAGE pays the employees nominally employed by its subsidiaries, including Plaintiff, through a centralized payroll system and department.

i. Employees of Defendant VANTAGE's subsidiaries, including Plaintiff, were directed to call the number of Defendant VANTAGE's payroll department for any pay related issues.

15. At all relevant times, the work performed by Plaintiff was directly essential to the

business operated by Defendants.

16. At all relevant times, Defendants were and continue to be an "enterprise engaged

in commerce" within the meaning of the FLSA, NYLL, and the wage laws of the jurisdictions of

their operations and the regulations thereunder.

17.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members were directly essential to the business operated by Defendants.

18.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## MULTISTATE FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of non-exempt employees working as production line and packaging workers and those similarly situated, employed by Defendants in any State where they do business on or after the date that is three (3) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

20.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to time shaving and due to Defendants' computerized payroll system improperly rounding down employees' hours of work to the employees' detriment. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

21.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

22.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of non-exempt employees working as production line and packaging workers and those similarly situated, employed by Defendants in the six (6) years and 228 days (pursuant to NY's Executive Order tolling during the COVID pandemic), or the relevant statutory period of each jurisdiction's applicable labor law, prior to the filing of the Complaint in this case (the "Class Members").

23.     To the extent necessary, Plaintiff will designate subclasses for each of the jurisdictions where Defendants have employees, including potential designation of Plaintiff as representative for New York Class members.

24.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty members of the Class. The members of potential subclass employees total over forty (40) in each of the states where Defendants have employees, including the State of New York.

26.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of: (i) failing to pay wages, including overtime, due to time shaving; (ii) failing to pay all wages, including overtime compensation, due to Defendants' computerized payroll system improperly rounding down employees' hours of work to the employees' detriment; (iii) failing to provide wage and hour notices, at date of hiring and annually; and (iv) failing to provide proper wage statements.

27.     Additionally, for Class Members working in New York, there exists an additional claim due to Defendants' failure to compensate spread of hours premiums (an additional hour of pay at the minimum wage rate) for workdays exceeding 10-hours pursuant to 12 N.Y.C.R.R. § 142-2.4.  Plaintiff's claims for failure to pay spread of hours could be alleged by any New York Class Members both and the relief sought is typical of the relief which would be sought by each subclass member in separate actions.

28.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

29.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

30.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31.     Defendants and other employers throughout the country violate state wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members

who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)    Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL and State wage laws;

b)    What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members;

c)    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d)    Whether Defendants properly notified Plaintiff and Class Members of their hourly rate and overtime rate;

e)    Whether Defendants paid Plaintiff and Class Members for the actual hours that they worked;

f)    Whether Defendants' payroll system rounded Class Members' hours to the Class Members' detriment;

g)    Whether Defendants provided wage and hour notices to Plaintiff and Class Members, at date of hiring and annually, per requirements of the NYLL and State wage laws;

h)    Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL and State wage laws; and

i)    Whether Defendants failed to compensate New York Class Members spread of hours premiums for workdays lasting longer than 10-hours;

## STATEMENT OF FACTS

33.    In or around June 2024, Plaintiff was hired by Defendant VANTAGE to work at its subsidiary Defendant GAL at its Bronx facility as a packaging finalizer on Defendants' production line.  Plaintiff's employment with Defendant terminated on or around July 19, 2024.

34.    Throughout Plaintiff's employment, Plaintiff was scheduled to work five (5) days a week.  Plaintiff's scheduled hours ran from 7:00 a.m. to 4:30 p.m Monday through Thursday and

from 7:00 a.m. to 3:30 p.m. on Friday.  For every day of work Defendants deducted an automatic thirty (30) minute break deduction.  In total, excluding the automatic meal deduction, Plaintiff was scheduled to work forty-four (44) hours per week.  FLSA Collective Plaintiffs and Class Members had similar work schedules each week.  At all times, Plaintiff would work his scheduled shift and additional hours which went uncompensated. At all times, Plaintiff, FLSA Collective Plaintiffs, and Class Members worked hours in excess of their scheduled hours for which they were not compensated.

35.    During Plaintiff's employment, Plaintiff arrived to work at or around 6:15 AM for his shift.  Upon arriving, Plaintiff would clock-in and begin work.  At the time of Plaintiff's arrival all necessary machines were on and materials present for Plaintiff to commence his work, which he did.  Further, on a daily basis, Plaintiff continued to work past his scheduled stop time before clocking-out.   Despite working hours beyond his scheduled time, this time would not be compensated as Defendants' payroll system was set-up to round one-directionally toward Plaintiff's, FLSA Collective Plaintiffs', and Class Members' schedules. Due to the unlawful rounding policy of Defendants, Plaintiff, FLSA Collective Plaintiffs, and Class Members were underpaid for each week of work.   For Plaintiff, the above policy resulted in unpaid overtime for at least the week ending on July 20, 2024.

36.    Defendant also failed to compensate New York Class Members, including Plaintiff, for workdays lasting longer than 10-hours per day.  As an example, on July 15, 2024, according to Defendants' records, Plaintiff's rounded clock-in is recorded as 7:00 a.m. and his rounded clock-out is recorded as 5:15 p.m., for a total of 10.25 hours.   Despite Defendants' records acknowledging that Plaintiff's workday lasted over 10 hours, Plaintiff was not provided any

additional compensation for this day as required by NYLL.  New York Class Members were similarly not compensated spread of hours.

37.    From the start of his employment to its end, Plaintiff was paid at the minimum wage rate. FLSA Collective Plaintiffs and Class Members were all compensated at similar rates throughout their employment.

*Plaintiffs' and Class Members' Wage Notice Claims:*

38.    Plaintiff and Class Members never received proper wage notices from Defendants. They also did not receive accurate wage statements from Defendants.  41 of 50 States require employees to receive at each pay period paystubs with accurate information as to employees work hours and rates of pay.

39.    The States of New York, Minnesota, and California have wage laws providing damages for the failure to provide accurate pay documents.  In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL— and California Labor Code 226 LC, Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendant.

40.    Defendants further violated the WTPA and California Labor Code 226 LC by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA and California Labor Code 226 LC. *See Shi Yong Li v. 6688 Corp*., 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every

hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

41.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the legislatures of New York and California. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

42.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and statements as required by NYLL and other state wage laws.

43.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the State legislature of New York and California. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's and Class Members' interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the State legislature

concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

44. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates and the failure to provide a wage notice properly listing the rate and frequency Plaintiff and Class Members were entitled to get paid, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendants' failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees. Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

45. Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to timely pay bills and delay or forgo purchases.

46.    Further, the direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

47.    The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

15

individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

48.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

49.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

50.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because

16

> "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

51.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and Class Members rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*.  Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

52.    Whether or not any Plaintiff and Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

53.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The

> government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon,* 999 F.2d 1101 at 1106.

54.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff and Class Members were irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2s to the IRS. *Coward,* 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

55.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL and other state wage laws.

56.     Defendants knowingly and willfully operated their business with a policy of not properly compensating either FLSA overtime rate (of time and one-half) or the State wages and overtime (of time and one-half) to Plaintiff, FLSA Collective Plaintiffs, and Class Members, including due Defendants' policy of time shaving.

57.     Defendants knowingly and willfully subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to time shaving of hours worked in violation of the FLSA and the State wage laws.

58.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

59.     Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

60.     At all relevant times, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

61.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

62.      At all relevant times, Defendants had gross annual revenues in excess of $500,000.00.

63.     At all relevant times, Defendants had a policy and practice of failing to pay wages, including overtime, to Plaintiff and FLSA Collective Plaintiffs for all overtime hours worked due to time shaving and am improper rounding system, in violation of the FLSA.

64.     Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendant. Plaintiff intends to obtain these records

by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

65.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all overtime hours, when Defendants knew or should have known such was due to Defendants' policies.

66.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

67.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

68.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving and improper rounding; plus an equal amount as liquidated damages.

69.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

70.    Plaintiff repeats each and every previous allegation in this Class and Collective Action Complaint as if fully set forth herein.

71.    At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2, 651, and 230.

72.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and Class Members all wages, including overtime, due to timeshaving and improper rounding, in violation of the NYLL.

73.     Defendants willfully violated the rights of Plaintiff and Class Members by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek due to time shaving and improper rounding.

74.     Defendants knowingly and willfully failed to provide spread of hours premiums to Plaintiff and Class Members whose workdays lasted longer than 10 hours.

75.     Defendants knowingly and willfully failed to provide accurate wage and hour notices, at the date of hiring and annually thereafter, to Plaintiff and Class Members, as required by NYLL § 195(1).

76.     Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members with every wage payment, as required by NYLL § 195(3). Defendants provided fraudulent wage statements that failed to accurately reflect the proper compensation owed and hours worked by Plaintiff and Class Members.

77.     Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, including overtime; damages for unreasonably delayed payments; statutory penalties; reasonable attorneys' fees; and costs and disbursements of the action.

## COUNT III

## VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS
### (brought on behalf of a Rule 23 Class)

78.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

79.     At all relevant times, Class Members were employed by Defendants within the meaning of the applicable state wage and hour laws, just as Plaintiff was employed by Defendants under the meaning of the FLSA.

80.     Plaintiff can represent the Class because the requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical for purposes of his overtime class claims.

81.     Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due a policy of underreporting employees' hours, in violation of the state wage and labor laws outlined above.

82.     Defendants knowingly and willfully failed to provide proper wage statements and notices to Class Members, as required under the laws of New York State and California.

83.     Due to Defendants' state law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

84.     In addition to violations of State Labor overtime laws under which Plaintiff brings class (not individual) claims, Defendants violated State provisions requiring employers to pay

employees all wages owed.  Since overtime wages are owed under the FLSA, these laws encompass class members' claims just as much as would explicit overtime requirements.  These state law provisions include the following:

> [e]ach employer in [Arizona] shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to his employees [and that] [e]ach employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employees up to such date . . . .[o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

Ariz. Rev. Stat. § 23-351(C); *see also Weeks v. Matrix Absence Mgmt.*, 2022 U.S. Dist. LEXIS 30849 (D. Ariz. 2022)

> Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

> Damages recoverable by an employee. When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

Iowa Wage Payment Collection Law, Chapter 91A.8; *see also Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) ("[T]he FLSA may be used to establish an employee's right to a certain amount of wages under the IWPCL and an employer's violation of the IWPCL for not paying all wages due its employees." (quotation omitted))

> (a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
> (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay

cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Wage Payment Act, La. R.S. § 23:631(A)(1)

An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover the full amount of the judgment and all costs of such suit, including reasonable attorney's fees.

Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1231(1)

In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years after the wages become due.

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-80(C).

85.     The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. § 448.110(6)(a).   However, Plaintiff invokes the Florida Minimum Wage Act not only in his individual capacity but to bring class claims on behalf of class members residing in Florida. Thus, Plaintiff is not personally required to provide Defendants with a pre-suit notice as to each class member.   As to these absent Florida class members, courts in Florida have "found no authority mandating that a detailed pre-suit notice for each and every putative class member be served on [d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA." *Griffith v. Landry's, Inc.*, 2016 U.S. Dist. LEXIS 196397, *12 (M.D. Fla. May 17, 2016).

86.     The Third Circuit Court of Appeals has clearly demonstrated the untenability of any such requirement:

We raise the following questions to further demonstrate the error of the proposed framework adopted by our dissenting colleagues. If the dissent's "colorable legal claim" test is a threshold inquiry for commonality, why should the court not consider every potential disqualifier from one's having a "colorable legal claim?" For example, in any class certification case, should the court consider whether all potential class members complied with applicable pre-notice requirements under

24

the relevant substantive law? Should the court consider whether every potential class member exhausted her administrative remedies under the relevant substantive law? Should the court evaluate whether each class member's claim complies with the applicable statute of limitations? The answers to these questions most certainly implicate whether a litigant, in a class action or otherwise, has a "colorable legal claim." These questions, moreover, show how flawed, from an administrative, logical, and practical standpoint, the dissent's and objectors' approach really is. No class would ever be certified because it would be impossible to demonstrate that every class member has a "colorable legal claim." (Dissenting Op. at 10.) More than this, it would gut commonality, for, most certainly, individual issues would then predominate. There would simply be no class that could meet this commonality and predominance test.

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310 (3rd Cir. 2011).

87.     Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims.  Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board" notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions."); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls.").

88.     Due to Defendants' state law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably

delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

**COUNT V**

**VIOLATION OF CLASS MEMBERS' CONTRACTS AND/OR DEFENDANTS'**
**UNJUST ENRICHMENT**
**(brought on behalf of a Rule 23 Class)**

89.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

90.    To the extent that the Fair Labor Standards Act and/or State wage laws do not protect employees for a failure to compensate gap-time claims (claims for unpaid wages for hours worked up to forty which do not implicate statutory minimum wage laws), Plaintiff and Class Members assert such claims under breach of contract and unjust enrichment.

91.    When Plaintiff and Class Members entered into employment with Defendants, the parties formed implied contracts, which contain inherent duties of good faith and fair dealings, to pay employees at agreed upon hourly rates for all hours worked.

92.    Plaintiff and Class Members provided services to Defendants as required under their agreements.  However, Defendants' failure to compensate all hours of work, including gap-time hours breached the Plaintiff's and Class Members' agreements.

93.    As a direct and proximate result of Defendants' failure to act fairly and in good faith, Plaintiff and Class Members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

94.    Moreover, absent an implied contract, by virtue of Defendants' conduct as alleged herein, and Plaintiff's and Class Members' performance, Defendants were unjustly enriched by

26

the Plaintiff's and Class Members' conduct and did not compensate Plaintiff and Class Members fully.

95.     The circumstances are such that it would be inequitable to allow Defendants to retain the excess benefit from Plaintiff and Class Members conduct without paying fair value for it.

96.     As a direct and proximate result of Defendants' wrongful withholding of funds that should have been paid to Plaintiff and Class Members, they have sustained damages in an amount according to proof at trial.

97.     Defendants' withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiff's and Class Members' rights with the intent to cause injury to Plaintiff and Class Members. Plaintiff and Class Members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL, and state wage laws;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.  An award of unpaid wages, including overtime, due to time shaving and improper rounding under the FLSA and the NYLL, and state wage laws;

d.  In the alternative, an award of full amount of wrongfully withheld or diverted payments and punitive damages due to breach of contract and/or unjust enrichment;

e.  An award for unpaid spread of hours premiums pursuant to the NYLL;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages, including overtime compensation, pursuant to the FLSA and the NYLL, and state wage laws;

g.  An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements;

h.  An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

j.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.  Designation of Plaintiff as Representative of the Class; and

l.  Such other and further relief as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: October 1, 2024

Respectfully submitted,

By: */s/ C.K. Lee*

C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*